UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| VALERIE SWANN, | ) |
| | ) |
| and | ) |
| | ) |
| SHERYL ALLEN, | ) |
| | ) |
| and | ) |
| | ) |
| BRENDA JEAN BARTLEY, | ) |
| | ) |
| and | ) |
| | ) |
| MARGARITA BECERRA, | ) |
| | ) |
| and | ) |
| | ) Case No. _____ |
| JOYCE BENHAM, | ) |
| | ) |
| and | ) |
| | ) |
| MARILYN BENTLEY, | ) **NOTICE OF REMOVAL** |
| | ) |
| and | ) |
| | ) |
| SHELIA PERRO BOOKER, | ) **JURY TRIAL DEMANDED** |
| | ) |
| and | ) |
| | ) |
| SUZANNE BRADIGAN, | ) |
| | ) |
| and | ) |
| | ) |
| CLAUDINE BRUNSON, | ) |
| | ) |
| and | ) |
| | ) |
| CAROLYN BURRUS, | ) |
| | ) |
| and | ) |
| | ) |
| LISA MARIE BUTLER, | ) |
| | ) |
| and | ) |
| | ) |
| | ) |

MARGIE CARSON,                          )
                                        )
and                                     )
                                        )
MILLICENT CARTER,                       )
                                        )
and                                     )
                                        )
CYNTHIA COLLINS,                        )
                                        )
and                                     )
                                        )
PATRICIA CRAIG,                         )
                                        )
and                                     )
                                        )
NORA DANIELS,                           )
                                        )
and                                     )
                                        )
EVELYN DAVIS,                           )
                                        )
and                                     )
                                        )
MARTHA DECKER,                          )
                                        )
and                                     )
                                        )
EVELYN DURRWACHTER,                     )
                                        )
and                                     )
                                        )
MICHELLE ELISE ELLIS,                   )
                                        )
and                                     )
                                        )
CARMEN GREEN-NEWMAN,                    )
                                        )
and                                     )
                                        )
BETTY GULLARD,                          )
                                        )
and                                     )
                                        )
MICHELE LEA HARDY,                      )
                                        )
and                                     )
                                        )
                                        )

2

KIMBERLEY JACKSON,                          )
                                            )
and                                         )
                                            )
ROSEMARIE LAFONTAINE,                       )
                                            )
and                                         )
                                            )
DONNA FAYE LANE,                            )
                                            )
and                                         )
                                            )
TOWAN LEONARD,                              )
                                            )
and                                         )
                                            )
BEVERLY LINGO,                              )
                                            )
and                                         )
                                            )
VERTENIA LINICOMN,                          )
                                            )
and                                         )
                                            )
GLENDA LONG,                                )
                                            )
and                                         )
                                            )
DIMITY LOWELL,                              )
                                            )
and                                         )
                                            )
SANDRA MATTHEWS,                            )
                                            )
and                                         )
                                            )
BRIDGETT LATRICE MAXWELL,                   )
                                            )
and                                         )
                                            )
REBECCA MEEKS,                              )
                                            )
and                                         )
                                            )
YVETTE MOSLEY,                              )
                                            )
and                                         )
                                            )
                                            )

3

JESSICA NOLFI,                                        )
                                                     )
and                                                  )
                                                     )
PATRICIA NUNLEY,                                     )
                                                     )
and                                                  )
                                                     )
ILAN OTTAVIAN,                                       )
                                                     )
and                                                  )
                                                     )
MARY ELAINE PAYNE,                                   )
                                                     )
and                                                  )
                                                     )
MICHELLE PAYNE,                                      )
                                                     )
and                                                  )
                                                     )
JANIE MONTGOMERY,                                    )
                                                     )
and                                                  )
                                                     )
BURNETTA ROGERS,                                     )
                                                     )
and                                                  )
                                                     )
STEVEN SALPETER, as Administrator of the             )
Estate of SUSAN WIDEN-SALPETER,                      )
deceased,                                            )
                                                     )
and                                                  )
                                                     )
SUSAN SCHNELLE,                                      )
                                                     )
and                                                  )
                                                     )
SHARON SHELTON,                                      )
                                                     )
and                                                  )
                                                     )
MARTHA SHOEMAKER,                                    )
                                                     )
and                                                  )
                                                     )
SARAH SIMPSON,                                       )
                                                     )
                                                     )

4

and                                                     )
                                                        )
LOIS SLEMP,                                             )
                                                        )
and                                                     )
                                                        )
CHRYSTAL SUPPLE,                                        )
                                                        )
and                                                     )
                                                        )
LENORA TOWNSEN,                                         )
                                                        )
and                                                     )
                                                        )
BRENDA JOYCE WARREN,                                    )
                                                        )
and                                                     )
                                                        )
LAVERNE WILLIAMS,                                       )
                                                        )
and                                                     )
                                                        )
FLOYE ZIMMERMAN,                                        )
                                                        )
and                                                     )
                                                        )
WILLIE MAE ENGLISH,                                     )
                                                        )
and                                                     )
                                                        )
DENNIS ZIERENBERG,                                      )
                                                        )
and                                                     )
                                                        )
SYLVIA WHITE,                                           )
                                                        )
and                                                     )
                                                        )
NICKY BATTAGLIA SR., Individually, and as              )
Representative of the Estate of LOIS                    )
BATTAGLIA, deceased,                                    )
                                                        )
and                                                     )
                                                        )
ERON EVANS,                                             )
                                                        )
and                                                     )
                                                        )
                                                        )

5

FRANCES LANGE,                                    )
                                                 )
and                                              )
                                                 )
DEBORAH L. SMITH,                                )
                                                 )
and                                              )
                                                 )
PATRICK MAHARG, as Representative of the         )
Estate of DENISE MAHARG, deceased,               )
                                                 )
and                                              )
                                                 )
SAMANTHA WELLS,                                  )
                                                 )
and                                              )
                                                 )
WALTER CUNNINGHAM, as Administrator of           )
the Estate of MILDRED CUNNINGHAM,                )
deceased,                                        )
                                                 )
                    Plaintiffs,                  )
                                                 )
vs.                                              )
                                                 )
JOHNSON & JOHNSON                                )
                                                 )
and                                              )
                                                 )
JOHNSON & JOHNSON CONSUMER                       )
COMPANIES, INC.                                  )
                                                 )
and                                              )
                                                 )
IMERYS TALC AMERICA, INC. F/K/A                  )
LUZENAC AMERICA, INC.                            )
                                                 )
and                                              )
                                                 )
PERSONAL CARE PRODUCTS COUNCIL                   )
F/K/A COSMETIC, TOILETRY, AND                    )
FRAGRANCE ASSOCIATION (CTFA),                    )
                                                 )
                    Defendants.                  )

Defendants Johnson & Johnson ("J&J") and Johnson & Johnson Consumer Companies,

Inc. ("JJCC") (collectively, "Johnson & Johnson Defendants"), by their undersigned attorneys,

hereby give notice of the removal of this action, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, to the United States District Court for the Eastern District of Missouri.  As grounds for removal, the Johnson & Johnson Defendants state as follows:

## NATURE OF THE ACTION

1.      This is a personal injury products liability action by 62 unrelated individuals from 27 different states.  Each Plaintiff alleges the development of some unspecified type of ovarian cancer as a result of applying "talcum powder" products (apparently including JJCC's Baby Powder® or Shower-to-Shower®) to her perineal area.  Plaintiffs separately allege that they developed ovarian cancer at different dates and times between 2005 and present day as a result of using different amounts of the products for different durations of time between the 1940's and 2014.  Plaintiffs filed their Petition ("Complaint") in the Circuit Court for the City of St. Louis against four defendants: the Johnson & Johnson Defendants, Imerys Talc America, Inc. (the alleged talc supplier for the Johnson & Johnson Defendants), and Personal Care Products Council, f/k/a Cosmetic, Toiletry, and Fragrance Association (a trade organization).  The Johnson & Johnson Defendants were served with the Complaint on August 25, 2014.  As set forth more fully below, this action is removable under diversity jurisdiction pursuant to the procedural misjoinder doctrine.

## GROUNDS FOR REMOVAL

**I.      DIVERSITY JURISDICTION OVER THIS ACTION IS PROPER.**

**A.      The Amount in Controversy Exceeds $75,000.**

2.      It is apparent from the face of the Complaint and the serious injuries alleged that

the amount in controversy in this action, and as to each Plaintiff, exceeds $75,000.[1]  Plaintiffs allege that each of them developed ovarian cancer as a result of applying "talcum powder" products to their perineal area.  (Compl. ¶¶ 2–63.)  They also claim that they were "injured catastrophically, and have been caused severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, and economic damages."  (*See, e.g.*, *id.* at ¶ 105; *see also id.* at ¶ 115 (claiming that Plaintiffs "were caused to incur medical bills, lost wages, and conscious pain and suffering and/or death"); *id.* at ¶¶ 119, 123, 127, 132, 135.)  Plaintiffs also request punitive damages (*id.* at ¶¶ 136–38), which are included in the amount in controversy. *See Allison v. Sec. Benefit Life Ins. Co.*, 980 F.2d 1213, 1215 (8th Cir. 1992) ("Where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining jurisdictional amount.") (citing *Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238, 240 (1943))).  Where, as here, Plaintiffs allege serious bodily injuries and/or chronic or permanent medical conditions, courts have readily found that the amount-in-controversy requirement is satisfied.  *See Allmon v. Walgreens Co.,* No. 4:09 CV 1151 DDN, 2010 WL 1292172, at *1 (E.D. Mo. Apr. 5, 2010) (holding amount-in-controversy requirement satisfied where plaintiff alleged "extreme weight loss, stunted growth, menstrual problems, ovarian cysts, and diabetes"); *see also, e.g.*, *Quinn v. Kimble*, 228 F. Supp. 2d 1038, 1041 (E.D. Mo. 2004) (finding that a jury could award more than $75,000 "given that plaintiffs suffered head, neck, and back injuries; incurred medical expenses and will incur further such expenses; have permanent, progressive, and disabling injuries;" and alleged lost wages); *Ward v. Sailormen, Inc.*, No. 4:06 CV 1814 JCH, 2007 WL 1040934, at *2 (E.D. Mo. Apr. 3, 2007)

---

[1]    "The jurisdictional fact . . . is not whether the damages *are* greater than the requisite amount, but whether a fact finder *might* legally conclude that they are . . . ."  *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002) (emphasis added).

(holding that the amount-in-controversy requirement was satisfied "in light of the extent to which Ward's injuries are plead"); *Hill v. Lincoln Prop. Co.*, 4:10 CV 675 DDN, 2011 WL 65929, at *2 (E.D. Mo. Jan. 10, 2011) (concluding that the plaintiff's allegations that she had sustained a permanent injury to her right ankle, experienced pain and suffering, and had lost wages and income was sufficient to meet the amount-in-controversy requirement).

      **B.**    **Complete Diversity Is Satisfied But For Plaintiffs' Misjoinder.**

    3.    Plaintiffs have attempted to join in a single complaint the distinct claims of 62 Plaintiffs who have no relationship to one another and who have not pled any facts linking in any way any of their individual experiences using JJCC's Baby Powder® and Shower-to-Shower® products or in allegedly developing ovarian cancer.  As set forth below, Plaintiffs' joinder of their unrelated claims does not satisfy the permissive joinder rules, and, because it seeks to destroy the diversity that otherwise exists as between the Defendants and nearly all of the Plaintiffs, it renders this case removable under the procedural misjoinder doctrine.

    4.    Plaintiff Valerie Swann is a citizen of the state of Missouri.

    5.    Plaintiff Sheryl Allen is a citizen of the state of Texas.

    6.    Plaintiff Brenda Jean Bartley is a city of the state of Florida.

    7.    Plaintiff Margarita Becerra is a citizen of the state of California.

    8.    Plaintiff Joyce Benham is a citizen of the state of Iowa.

    9.    Plaintiff Marilyn Bentley is a citizen of the state of New York.

    10.    Plaintiff Perro Booker is a citizen of the state of Louisiana.

    11.    Plaintiff Suzanne Bradigan is a citizen of the state of Illinois.

    12.    Plaintiff Claudine Brunson is a citizen of the state of South Carolina.

    13.    Plaintiff Carolyn Burrus is a citizen of the state of Louisiana.

14.     Plaintiff Lisa Marie Butler is a citizen of the state of Pennsylvania.

15.     Plaintiff Margie Carson is a citizen of the state of Georgia.

16.     Plaintiff Millicent Carter is a citizen of the state of Tennessee.

17.     Plaintiff Cynthia Collins is a citizen of the state of North Carolina.

18.     Plaintiff Patricia Craig is a citizen of the state of Alabama.

19.     Plaintiff Nora Daniels is a citizen of the state of Tennessee.

20.     Plaintiff Evelyn Davis is a citizen of the state of Maryland.

21.     Plaintiff Martha Decker is a citizen of the state of Michigan.

22.     Plaintiff Evelyn Durrwachter is a citizen of the state of Virginia.

23.     Plaintiff Michelle Elise Ellis is a citizen of the state of California.

24.     Plaintiff Carmen Green-Newman is a citizen of the state of California.

25.     Plaintiff Betty Gullard is a citizen of the state of Minnesota.

26.     Plaintiff Michele Lea Hardy is a citizen of the state of Ohio.

27.     Plaintiff Kimberly Jackson is a citizen of the state of Tennessee.

28.     Plaintiff Rosemarie Lafontaine is a citizen of the state of Connecticut.

29.     Plaintiff Donna Faye Lane is a citizen of the state of Tennessee.

30.     Plaintiff Towan Leonard is a citizen of the state of Alabama.

31.     Plaintiff Beverly Lingo is a citizen of the state of Arkansas.

32.     Plaintiff Vertenia Linicomn is a citizen of the state of Texas.

33.     Plaintiff Glenda Long is a citizen of the state of Georgia.

34.     Plaintiff Dimity Lowell is a citizen of the state of Kansas.

35.     Plaintiff Sandra Matthews is a citizen of the state of New Jersey.

36.     Plaintiff Bridgett Latrice Maxwell is a citizen of the state of Tennessee.

37.     Plaintiff Rebecca Meeks is a citizen of the state of Louisiana.

38.     Plaintiff Yvette Mosley is a citizen of the state of Georgia.

39.     Plaintiff Jessica Nolfi is a citizen of the state of Florida.

40.     Plaintiff Patricia Nunley is a citizen of the state of Louisiana.

41.     Plaintiff Ilan Ottavian is a citizen of the state of Pennsylvania.

42.     Plaintiff Mary Elaine Payne is a citizen of the state of Tennessee.

43.     Plaintiff Michelle Payne is a citizen of the state of Georgia.

44.     Plaintiff Burnetta Rogers is a citizen of the state of Alabama.

45.     Plaintiff Steven Salpeter, who brings his action in a representative capacity for the estate of Susan Widen-Salpeter, is a citizen of the state of New York.

46.     Plaintiff Susan Schnelle is a citizen of the state of Hawaii.

47.     Plaintiff Sharon Shelton is a citizen of the state of Michigan.

48.     Plaintiff Martha Shoemaker is a citizen of the state of Texas.

49.     Plaintiff Sarah Simpson is a citizen of the state of Kentucky.

50.     Plaintiff Lois Slemp is a citizen of the state of Virginia.

51.     Plaintiff Chrystal Supple is a citizen of the state of Ohio.

52.     Plaintiff Lenora Townsen is a citizen of the state of Georgia.

53.     Plaintiff Brenda Joyce Warren a citizen of the state of Florida.

54.     Plaintiff Laverne Williams is a citizen of the state of Nebraska.

55.     Plaintiff Floye Zimmerman is a citizen of the state of Arkansas.

56.     Plaintiff Willie Mae English is a citizen of the state of Alabama.

57.     Plaintiff Dennis Zierenberg, who brings his action in a representative capacity for the estate of Connie Sue Zierenberg, is a citizen of the state of Illinois.

11

58.     Plaintiff Sylvia White is a citizen of the state of Arizona.

59.     Plaintiff Nicky Battaglia Sr., who brings his action in a representative capacity for the estate of Lois Battaglia, is a citizen of the state of California.

60.     Plaintiff Eron Evans is a citizen of the state of Texas.

61.     Plaintiff Frances Lange is a citizen of the state of Minnesota.

62.     Plaintiff Deborah L. Smith is a citizen of the state of Maryland.

63.     Plaintiff Patrick Maharg, who brings his action in a representative capacity for the estate of Denise Maharg, is a citizen of the state of Pennsylvania.

64.     Plaintiff Samantha Wells is a citizen of the state of Texas.

65.     Plaintiff Walter Cunningham, who brings his action in a representative capacity for the estate of Mildred Cunningham, is a citizen of the state of Alabama.

66.     Johnson & Johnson is a New Jersey corporation with its principal place of business in the State of New Jersey.

67.     Johnson & Johnson Consumer Companies, Inc. is also a New Jersey corporation with its principal place of business in the State of New Jersey.

68.     Imerys Talc America, Inc. ("Imerys"), f/k/a Luzenac America, Inc., is a Delaware corporation with its principal place of business in the State of California.

69.     Personal Care Products Council, f/k/a Cosmetic, Toiletry, and Fragrance Association ("PCPC"), is a corporation organized under the laws of the District of Columbia and its principal place of business is in the District of Columbia.

70.     Of the 62 individual Plaintiffs, _57 of the Plaintiffs are completely diverse from all four named Defendants_, and _only one of those 57 diverse Plaintiffs is a Missouri resident_.   Of the five remaining Plaintiffs, one is a citizen of New Jersey (and, thus, non-diverse from the

Johnson & Johnson Defendants) and four are citizens of California (and, thus, non-diverse from Imerys). To reiterate, complete diversity exists between all four named Defendants and 57 Plaintiffs in this action. The distinct claims of the 62 unrelated Plaintiffs in this action have been procedurally misjoined, and the Court should therefore sever all of these claims into separate actions and remand only the claims of the five Plaintiffs as to whom complete diversity is lacking. Accordingly, following appropriate severance and remand, there exists complete diversity of citizenship between the remaining 57 Plaintiffs and all of the Defendants pursuant to 28 U.S.C. § 1332.

### C.   Plaintiffs Are Procedurally Misjoined.

71.     In a transparent attempt to deprive Defendants of a federal forum, Plaintiffs have procedurally misjoined the distinct personal injury claims of 62 Plaintiffs from 27 different states, only five of whom are from New Jersey or California and 57 of whom are completely diverse from all of the Defendants.[2] But for Plaintiffs' procedural misjoinder of their varying claims, all but five of the Plaintiffs are diverse from all of the named Defendants and their claims satisfy the requirements for diversity jurisdiction.

72.     The procedural misjoinder doctrine is intended to ensure that a defendant's statutory right to remove cannot be subverted by procedural gamesmanship, such as here. *See Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996) (procedural-misjoinder doctrine applies where plaintiffs' claims are "egregious[ly]" misjoined to defeat federal

---

[2]     Prior to this mass filing (as well as another recent mass filing, *see Hogans v. J&J*, No. 4:14-cv-01385 (E.D. Mo.), Plaintiffs' counsel filed two other *single-plaintiff* suits against the same four defendants. *See Blaes v. J&J*, No. 4:14-cv-00213-JAR (E.D. Mo.); *Cebulske v. J&J*, No. 14-627-MJR-SCW (S.D. Ill.). Defendants removed the single-plaintiff cases to federal court on the basis of diversity jurisdiction and, to date, neither of these removed cases has been remanded. Plaintiffs' new mass filings appear to be a shift in tactics in an attempt to avoid future removals.

jurisdiction and "have no real connection" to one another), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000); *see also In re Benjamin Moore & Co.*, 318 F.3d 626, 630–31 (5th Cir. 2002) (noting "the force of the *Tapscott* principle that fraudulent misjoinder of plaintiffs is no more permissible than fraudulent misjoinder of defendants to circumvent diversity jurisdiction"); *Greene v. Wyeth*, 344 F. Supp. 2d 674, 684–85 (D. Nev. 2004) ("[T]his Court agrees with the Fifth and Eleventh Circuits that the [procedural misjoinder] rule is a logical extension of the established precedent that a plaintiff may not fraudulently join a defendant in order to defeat diversity jurisdiction in federal court" (footnotes omitted)).  While the Eighth Circuit has not explicitly accepted or rejected procedural misjoinder as a basis for removal,[3] numerous courts from around the country have affirmed the validity of the procedural misjoinder doctrine, including as to cases removed from Missouri state court.[4]

73.    Under the procedural misjoinder doctrine, federal diversity jurisdiction exists "where diversity is destroyed only through misjoinder of parties." *Asher v. 3M*, No. 04-CV-522-

---

[3]      *See In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 622 (8th Cir. 2010).

[4]      *See, e.g., In re Propecia (Finasteride) Prod. Liab. Litig.*, No. 12-MD-2331 JG VVP, 2013 WL 3729570, at \*13 (E.D.N.Y. May 17, 2013); *see also Augustine v. Emp'rs. Mut. Cas. Co.*, No. 2:08-cv-1102, 2010 U.S. Dist. LEXIS 126431, at \*49 (E.D. La. Nov. 30, 2010); *WIAV Networks, LLC v. 3COM Corp.*, No. C 10-03448 WHA, 2010 U.S. Dist. LEXIS 110957, at \*19–20 (N.D. Cal. Oct. 1, 2010); *Bishop v. Sturdivant*, No. 4:10CV49TSL-JCS, 2010 U.S. Dist. LEXIS 79992, at \*8 (S.D. Miss. Aug. 6, 2010); *Hughes v. Sears, Roebuck & Co.*, No. 2:09-CV-93, 2009 WL 2877424, at \*5–6 (N.D. W. Va. Sept. 3, 2009); *Willingham v. State Farm Ins. Co.*, No. 2:09-CV-59-SA-SAA, 2009 U.S. Dist. LEXIS 76639, at \*11 (N.D. Miss. Aug. 27, 2009); *Sutton v. Davol, Inc.*, 251 F.R.D. 500, 505 (E.D. Cal. 2008); *Milliet v. Liberty Mut. Ins. Co.*, No. 07-7443, 2008 U.S. Dist. LEXIS 2344, at \*7–8 (E.D. La. Jan. 11, 2008); *Jones v. State Farm Fire & Cas. Co.*, No. 06-7994, 2007 U.S. Dist. LEXIS 102293, at \*4 (E.D. La. Feb. 28, 2007); *Grennell v. W. S. Life Ins. Co.*, 298 F. Supp. 2d 390, 396 (S.D. W. Va. 2004); *Reed v. Am. Med. Sec. Grp., Inc.*, 324 F. Supp. 2d 798, 803–05 (S.D. Miss. 2004); *Burns v. W. S. Life Ins. Co.*, 298 F. Supp. 2d 401, 403 (S.D. W. Va. 2004); *Madison Materials Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-CV-14 WS, 2004 U.S. Dist. LEXIS 31111, at \*13 (S.D. Miss. Sept. 14, 2004); *Smith v. Nationwide Mut. Ins. Co.*, 286 F. Supp. 2d 777, 781 (S.D. Miss. 2003).

KKC, 2005 U.S. Dist. LEXIS 42266, at *37 (E.D. Ky. June 30, 2005).  "Misjoinder of parties occurs when a party fails to satisfy the conditions for permissive joinder under Rule 20(a)."  *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 144 (S.D.N.Y. 2001).  Accordingly, procedural misjoinder applies where, as here, Plaintiffs have improperly joined different claims that did not arise "out of the same transaction, occurrence, or series of transactions or occurrences" and give rise to common questions of law or fact.  FED. R. CIV. P. 20(a); MO. SUP. CT. R. 52.05 (explaining that, in order for plaintiffs to join their claims, they each must allege a "right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action"); *see also In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, MDL No. 2243, 2012 WL 1118780, at *3 (D.N.J. Apr. 3, 2012) (observing that "Missouri's permissive joinder rule is substantively identical to Fed. R. Civ. P. 20(a)").  Where procedural misjoinder applies, a court should sever the improperly joined claims into separate and distinct cases.

74.     Here, the claims of these 62 different Plaintiffs have been procedurally misjoined because they do not arise out of the same transaction, occurrence, or series of transactions or occurrences.

75.     Among other differences that are expected to exist among the 62 Plaintiffs, each Plaintiff will have a unique medical history that will likely implicate different risk factors for ovarian cancer.  Moreover, each Plaintiff alleges to have used "talcum powder" products, likely obtained from different sources, and used for different periods of time, in different amounts, for different durations, and with different frequencies.  Additionally, it is quite likely that each woman applied these products to different areas of the body using different methods.  These

differences necessarily implicate both different plaintiff and different defense theories.  Further, each Plaintiff has received individualized medical care, provided by different medical providers, before and after the alleged injuries and specifically in regard to the injuries at issue in this suit. Each Plaintiff allegedly started and stopped her usage of talcum powder products at different times and sustained alleged injuries at different times.  In sum, each Plaintiff will present a unique set of facts, based on her own individual circumstances, which did not arise out of the same transaction or occurrence.  Indeed, these variations will give rise to unique questions of fact and law that will predominate in each case.

76.    As reflected by the Complaint, the factual variations in these 62 cases that will dominate the pertinent scientific and legal inquiries cannot be understated.

- Some of the 62 Plaintiffs allege they used "talcum powder" products for a period of almost 70 years prior to their ovarian cancer diagnosis, while others allegedly used such products for only two years.  For example, Brenda Bartley (a citizen of Florida) alleges she used talcum powder products from 1943 to 2011—a *period of approximately 68 years*, while Evelyn Davis (a citizen of Maryland) alleges she used such products from 2009 to 2011—*a period of just 2 years*.  (*Id*. ¶¶ 4, 18.)

- Many of the 62 Plaintiffs allege they were diagnosed in recent history, while others allegedly were diagnosed with ovarian cancer *nearly a decade ago*. For example, Carolyn Burrus (a citizen of Louisiana) alleges she was diagnosed in 2014, while Ilan Ottavian (a citizen of Pennsylvania) alleges she was diagnosed in 2005 and Margie Carson (a citizen of Georgia) alleges she was diagnosed in 2009.  (Compl. ¶¶ 11, 13, 39.)

- Some of the 62 Plaintiffs allegedly used "talcum powder" products until or around the time of being diagnosed with ovarian cancer, while others admit to stopping their use of "talcum powder" products decades before sustaining any injury.  For example, Evelyn Durrwachter (a citizen of Virginia) alleges she used such products up until her diagnosis in November 2013, while Martha Decker (a citizen of Michigan) allegedly was diagnosed with ovarian cancer *22 years after her last usage of such products*.  (*Id*. ¶¶ 19–20.)

- Some of the 62 Plaintiffs allege they stopped using "talcum powder" products immediately upon their diagnosis of ovarian cancer, while others allegedly continued using such products after their alleged diagnosis.  For example,

Sheryl Allen (a citizen of Texas) alleges she stopped using talc products in May 2013 upon her diagnosis, while Frances Lange (a citizen of Minnesota) alleges she was diagnosed in 2008 but is still using such products to this day—*even after bringing this lawsuit*. (*Id*. ¶¶ 3, 59.)

- At least five of the Plaintiffs provide absolutely no information about dates of alleged usage of the "talcum powder" products or the date of alleged injury. (*Id*. ¶¶ 43, 55, 57, 61, 63.)  These plaintiffs are also the only plaintiffs who purport to bring a wrongful death claim on behalf of a decedent's estate, while all other plaintiffs bring their claims individually.

In short, the only common factual issue in all of these 62 cases is that Plaintiffs allege that at some point in time they were diagnosed with ovarian cancer after (or while) using "talcum powder products."  And even this fact is not necessarily common among the Plaintiffs as there will undoubtedly be different subtypes of ovarian cancer among them, which will trigger different theories on both sides.  Further, each Plaintiff's (i) dates of product usage, (ii) amount and duration of product usage, (iii) date of alleged injury, (iv) temporal relationship between product usage and date of injury, and (v) overall medical history (including risk factors, medical treatment, and prognosis) differ significantly.  All of these issues will require Plaintiffs to offer individualized, scientific theories as to how markedly different usages of a cosmetic product can give rise to substantially different development of disease.  And, similarly, Defendants will offer defenses tailored to each of these specific cases and scenarios.  In sum, all of these differences require meaningful individualized treatment of each Plaintiff.

77.    Finally, Plaintiffs reside in 27 different states.  Moreover, Plaintiffs allege that they used talcum powder products in 31 different jurisdictions.  Under Missouri's choice-of-law rules, the law of each Plaintiff's home state, or alternatively the law of each State in which Plaintiff alleges to have used talcum powder products and/or sustained injury, is likely to govern the individual claims.  *See, e.g.*, *Johnny v. Bornowski*, No. 10-04008-CV-FJG, 2011 U.S. Dist. LEXIS 150016, at *2 (W.D. Mo. Dec. 22, 2011) (explaining that Missouri follows "the most

17

significant relationship test," which "carries a presumption that the state with the most significant relationship is the state where the injury occurred" (citations omitted)).   As such, Plaintiffs' claims will implicate (at a minimum) the laws of 27 different states, and each of these states will have unique and potentially conflicting laws regarding products liability claims.  *See Nosker v. Gill Bros. Trucking, GBTI, Inc.*, No. 06-0286-CV-W-REL, 2006 U.S. Dist. LEXIS 43891, at *16 (W.D. Mo. June 28, 2006) (denying permissive intervention, *inter alia*, because different law would apply to the proposed plaintiff interveners and trying a case involving claims governed by different law "would lead to complexity and delay and would likely confuse the jury").  These choice-of-law issues will present significant problems for the parties and the Court if the egregious joinder of unrelated claims is allowed to stand.  The most obvious example will arise at the outset of this case with regard to statutes of limitations, because, as noted above, numerous of the 62 Plaintiffs from different states allege dates of diagnosis many years before filing suit.

78.     Numerous courts have found procedural misjoinder under the precise circumstances presented here.  Those courts have recognized that claims by product liability plaintiffs—like those in this case—are highly individualized and cannot be joined to defeat jurisdiction, even where the plaintiffs allegedly used the same product.  *See, e.g.*, *In re Propecia (Finasteride) Prod. Liab. Litig.*, No. 12-MD-2331 JG VVP, 2013 WL 3729570, at *13 (E.D.N.Y. May 17, 2013) (finding procedural misjoinder as to suit removed from Missouri state court where "the injuries here will greatly vary from plaintiff to plaintiff based on factors like age, physical state at the time of taking the drug, and dosage"); *In re Fosamax*, 2012 WL 1118780, at *4 (finding procedural misjoinder where plaintiffs "allege such unspecific injuries as to make it impossible to determine how the Plaintiffs share any connection" and "given the complicated causation questions that pervade drug product liability claims, Plaintiffs' claims will require

divergent questions of law and fact"); *Weaver v. Am. Home Prods. Corp.* (*In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*), 294 F. Supp. 2d 667, 679 (E.D. Pa. 2003) (finding that plaintiffs were procedurally misjoined because "the claims of the pharmaceutical plaintiffs who had drugs prescribed by different doctors for different time periods do not arise out of the same 'transaction, occurrence, or series of transactions or occurrences'" (quoting FED. R. CIV. P. 20(a))); *In re Baycol Prods. Litig.*, No. 03-2931, 2003 WL 22341303, at *3 (D. Minn. 2003) (holding that a plaintiff in a pharmaceutical product-liability action had "been fraudulently [mis]joined with the other plaintiffs, warranting severance and remand" of that plaintiff's claims and denying plaintiffs' motion to remand); *In re Rezulin*, 168 F. Supp. 2d at 146 (prescription drug plaintiffs' claims were procedurally misjoined where they did not "allege that they received Rezulin from the same source or that they were exposed to Rezulin for similar periods of time" and where they alleged "different injuries"); *Chaney v. Gate Pharms. (In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.)*, No. 98-20478, 1999 WL 554584, at *3 (E.D. Pa. July 16, 1999) (pleading went "well beyond mere misjoinder" where plaintiffs "attempt[ed] to join persons from seven different states into one civil action who have absolutely no connection to each other except that they each ingested fenfluramine, Redux (dexfenfluramine), phentermine or some combination of those drugs").

79.     In addition, "[a] multitude of cases around the country have held that plaintiffs were not properly joined when the only common link among them was a defective [product]." *Stinnette v. Medtronic Inc.*, No. H-09-03854, 2010 WL 767558, at *2 (S.D. Tex. Mar. 3, 2010).[5]

---

[5]      *Accord, e.g.*, *McNaughton v. Merck & Co.*, No. 04 Civ. 8297(LAP), 2004 WL 5180726, at *1–3 (S.D.N.Y. Dec. 17, 2004); *In re Baycol Prods. Liab. Litig.*, MDL No. 1431, 2002 WL 32155269, at *2 (D. Minn. July 5, 2002); *Warner v. Stryker Corp.*, No. 08-6368-AA, 2009 WL 1773170, at *1–2 (D. Or. June 22, 2009).

Severance is required where, as here, there were "numerous different . . . [treating] physicians involved . . . who are unlikely to have any common link to any two (2) of these plaintiffs, . . . the medical histories of the plaintiffs . . . . are certainly diverse," and the injuries at issue involved different products, individualized risk factors, and unique circumstances.  *Adams*, 2010 WL 1339948, at *8.  Moreover, that Plaintiffs' claims are governed by the law of each of their home states further shows that they do not arise out of the same transaction or occurrence.  *See Boschert v. Pfizer, Inc.*, No. 4:08-CV-1714, 2009 U.S. Dist. LEXIS 41261, at *7–8 (E.D. Mo. May 14, 2009) (granting motion to sever claims of four plaintiffs allegedly injured as a result of using smoking-cessation medication Chantix, holding that, "the mere fact [that] four plaintiffs took Chantix at some point in time and suffered some sort of mental or behavioral side effect is not enough of a logical or factual connection to satisfy the same transaction or occurrence requirement."); *Cumba v. Merck & Co.*, No. 08-CV-2328, 2009 U.S. Dist. LEXIS 41132, at *4–5 (D.N.J. May 12, 2009) (granting motion to sever claims of 49 plaintiffs who allegedly "took the drug Vytorin and . . . [allegedly] sustained broadly similar injuries as a result thereof" because their claims were based on disparate facts); *In re Seroquel Prods. Liab. Litig.*, No. 6:06-md-1769, 2007 U.S. Dist. LEXIS 17603, at *115–22 (M.D. Fla. Mar. 7, 2007) (severing claims of multiple plaintiffs alleging injury from use of Seroquel and ordering each to file an individual complaint and pay the court's full filing fee).

80.    The impropriety of Plaintiffs' joinder is also clear under Missouri precedent.  For instance, in a similar case involving many pharmaceutical plaintiffs from numerous states alleging injuries over a wide span of years, a Missouri court observed that in these types of cases, "a plaintiff's claim depends on particular characteristics such as the plaintiff's medical history, her particular treatment, and her injury" and that "[c]ausation must be individually determined

20

based on the injury alleged and other factors." *Ballard v. Wyeth,* No. 042-07388A, slip op. at 3 (Mo. Cir. Ct. St. Louis Aug. 24, 2005) (attached as Ex. A). In light of the individualized facts of the plaintiffs' claims, the court concluded that severance was proper, for "[t]he fact that all Plaintiffs ingested HRT drugs is not sufficient to meet the 'transaction or occurrence' requirement" and "the joinder of so many disparate causes of action makes this case unduly complex and burdensome." *Id.* at 4; *see also Brown v. Walgreens Co.,* No. 1022-CC00765, slip op. at 4 (Mo. Cir. Ct. St. Louis Nov. 15, 2010) (attached as Ex. B) (granting defendants' motion to sever claims of multiple pharmaceutical product liability plaintiffs under Missouri law because "[e]ach Plaintiff has his or her own individual combination of facts and evidence surrounding his or her ingestion of different medications" and recognizing that "[t]he fact that all Plaintiffs ingested Reglan or its generic equivalent is not sufficient to meet the 'transaction or occurrence' requirement").

81. Additionally, Missouri courts view skeptically cases asserted by numerous plaintiffs when they are brought against multiple defendants—as has been done here. In *Ballard*, for example, the court noted that the plaintiffs' "attempt to join claims by **and** against different parties" suggested that the claims were "not 'reasonably related' to allow a joinder of plaintiffs." *Ballard*, slip op. at 3 (emphasis in original); *see also Brown*, slip op. at 3 (indicating that severance was proper when "Plaintiffs attempt to join claims against multifarous defendants"). The case at bar is no different: It is brought by 62 unrelated plaintiffs against four different defendants.

82. Moreover, the misjoinder Plaintiffs have attempted here is certainly egregious, making this case distinguishable from the case at issue in the Eighth Circuit's decision in *Prempro*. Indeed, not only is Plaintiffs' joinder procedurally improper, but it was also effected

for the sole purpose of defeating diversity jurisdiction.  Additionally, in an apparent effort to obscure the many factual differences among these 62 different Plaintiffs' distinct claims, Plaintiffs' Complaint omitted basic plaintiff-specific information that should be included in products liability actions, such as which specific product each Plaintiff allegedly used[6] and basic facts related to that use.

83.     Indeed, including this information would invariably expose numerous differences in the circumstances that gave rise to Plaintiffs' claims. Plaintiffs here have barely alleged any Plaintiff-specific facts other than their state of residence and their generalized (and wildly differing) dates of alleged usage of "talcum powder."  Given Plaintiffs' geographic diversity, complete lack of relationship with one another, and the absence of any connection regarding their circumstances of using JJCC's products, there is no apparent reason for this massive misjoinder and omission of basic information other than to defeat diversity.   Plaintiffs' allegations that they used "talcum powder" at some point in time and that they each developed ovarian cancer at some time thereafter does not create a common occurrence or series of occurrences under the federal and Missouri permissive joinder rules as applied in the cases set forth above.  Plaintiffs' misjoinder is, therefore, egregious.  *In re Fosamax*, 2012 WL 1118780, at *5 (finding misjoinder egregious where "action involve[d] an attempt to join 91 plaintiffs from 28 different states . . . [y]et only three Plaintiffs are citizens of Missouri where the complaint was filed, and none of the non-resident Plaintiffs claims any connection with Missouri," such that

---

[6]     In fact, each Plaintiff only generally asserts that she used "talcum powder," and Plaintiffs seek to hold all Defendants liable for alleged "negligent conduct in the research, development, testing, manufacture, production, promotion, distribution, marketing, and sale of talcum powder."  *See* Complaint, generally.  Of course, JJCC is not the only manufacturer of body powders containing talcum powder, and Plaintiffs' vague allegations, which lack any detail regarding product identification as to each specific Plaintiff, provide further proof of egregious misjoinder.

22

"the factual, temporal, and geographic diversity among Plaintiffs' claims wholly disregards the purposes of permissive joinder because these are claims that no reasonable person would normally expect to be tried together" (quotation omitted)).  Plaintiffs' counsel's mass filing of claims by unrelated individuals shows that, as in other litigations, "the true reason for the joinders is that the collection of Plaintiffs in each case were all part of a certain law firm's existing . . . 'inventory.'"  *In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563, 651 (S.D. Tex. 2005).  And since the overwhelming majority of the Plaintiffs are diverse from the Defendants, the evident purpose of joining the non-diverse Plaintiffs was to escape diversity jurisdiction.

84.     The Johnson & Johnson Defendants acknowledge that some courts in this District have recently remanded multi-plaintiff pharmaceutical cases based on arguments of misjoinder. *See, e.g., Lovett v. Pfizer, Inc*., No. 4:14–CV–458 CEJ (E.D. Mo. Mar. 26, 2014).  Regardless, this case resembles *Ballard* in that it involves Plaintiffs alleging distinct exposure periods, during varying decades, for dissimilar durations, and presumably to different products—and, therefore, joinder is unduly complex and burdensome.  *See Ballard*, slip op. at 1.   These facts support a finding of egregious misjoinder.

85.     The egregiousness of the misjoinder here is further demonstrated by the fact that the Circuit Court for the City of St. Louis (and indeed, any court in Missouri – state or federal) lacks personal jurisdiction (both general and specific) over the Defendants as to the claims of all but **one** of the 62 Plaintiffs.[7]  Under the Supreme Court's controlling opinion in *Daimler AG v.*

---

[7]     Plaintiff Valerie Swann is the only plaintiff who alleges that she purchased or used talcum powder in Missouri and developed ovarian cancer in Missouri.  (Compl. ¶ 2.)  In passing, Plaintiff Betty Gullard alleges that she used talcum powder in Missouri—as well as two other states.  (*Id*. ¶ 23.)  She does not provide *any* details concerning her alleged usage.  She does, however, admit that she is a Minnesota citizen who "developed" ovarian cancer in Minnesota and was ultimately diagnosed in Minnesota.  Her relationship to Missouri appears

*Bauman*, 134 S. Ct. 746 (2014), general jurisdiction exists over a non-resident corporation only when its "affiliations with the State are so continuous and systematic as to render it essentially *at home* in the forum State." *Id.* at 751-54 (citations omitted, emphasis added); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (same). A corporation generally is "at home" only in the corporation's place of incorporation and principal place of business. *Id*. at 760. Plaintiffs assert that both Johnson & Johnson Defendants "regularly transacted, solicited, and conducted business in all States of the United States, including the State of Missouri." (Comp. ¶¶ 65, 67.) Similarly, Plaintiffs allege that "all Defendants . . . introduced [the products at issue] into interstate commerce with knowledge and intent that such products be sold in [listing 32 states, including Missouri, and the District of Columbia]." (*Id.* ¶¶ 72.)

86.     As Plaintiffs concede in their Complaint, the Defendants are incorporated and maintain their principal places of business in New Jersey, Delaware, California, and the District of Columbia, and there are no other facts alleged to render the Defendants *at home* in Missouri in order to support the exercise of general jurisdiction. Accordingly, courts in Missouri lack general jurisdiction over the Defendants as to the claims of 61 of the 62 Plaintiffs. *See Daimler*, 134 S. Ct. at 760; *see also Sonera Holding B.V. v. Cukurova Holding A.S*, 750 F.3d 221, 223 (2d Cir. 2014) (stating that the *Daimler* opinion "reaffirms that general jurisdiction extends beyond an entity's state of incorporation and principal place of business only *in the exceptional case* where its contacts with another forum are so substantial as to render it 'at home' in that state") (emphasis added); *Eaves v. Pirelli Tire, LLC*, No. 13–1271–SAC, 2014 WL 1883791, at *9 (D. Kan. May 12, 2014) (holding that "plaintiffs' stream of commerce arguments are to no avail for general jurisdiction") (unpublished); *Lexion Medical, LLC v. SurgiQuest, Inc*., No. 13–2453,

---

tenuous at best, and her allegations certainly do not rise to the level necessary to impose specific jurisdiction over the Johnson & Johnson Defendants.

2014 WL 1260761, at *4 (D. Minn. Mar. 26, 2014) (stating that although defendant had "repeatedly transacted business" in State, "a corporation's "continuous activity of some sorts within a state" is not sufficient to support general jurisdiction) (unpublished); *In re Plavix Related Cases*, No. 2012L5688, 2014 WL 3928240, at *5-8 (Trial Order) (Ill. Cir. Ct. Aug. 11, 2014) ("Plaintiffs' jurisdictional framework, taken to its logical conclusion, would produce exactly that forbidden result: national general jurisdiction in every state in which Defendants are doing business and generating sales revenue. *Daimler* makes clear that such an approach to general jurisdiction does not comport with due process.").

87.     Specific jurisdiction also is lacking as to these claims. The Complaint establishes that the claims of these non-Missouri Plaintiffs, who admit that they did not purchase or use the products in Missouri and did not "develop"[8] ovarian cancer in Missouri, have no connection to Missouri. Given these undisputed facts, and the absence of any factual allegations identifying any in-state activities of the Defendants that "gave rise" to these Plaintiffs' claims, courts in Missouri lack specific jurisdiction over the Defendants as to the claims of these Plaintiffs. *See Daimler*, 134 S. Ct. at 760 (specific jurisdiction focuses on whether the in-state activities of the corporate defendant "*gave rise to the liabilities sued on*.") (emphasis added). As such, the exercise of general or specific jurisdiction over Defendants as to the claims of these 61 Plaintiffs would violate the Defendants' due process rights.[9]

---

[8]     For purposes of this filing, the Johnson & Johnson Defendants adopt the terminology used by Plaintiffs in the Complaint.

[9]     The Johnson & Johnson Defendants are concurrently moving to dismiss the claims of these 61 Plaintiffs for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, among other grounds. The Johnson & Johnson Defendants also expect that PCPC will move to dismiss the claims asserted by all 62 Plaintiffs against it for lack of personal jurisdiction, as PCPC has already done in the essentially identical *Hogans* lawsuit.

88.    Furthermore, as expressed by the district court in *In re Propecia*, the Johnson & Johnson Defendants maintain that the Eighth Circuit's ruling in *Prempro* was wrongly decided insofar as it (a) failed to account for Rule 20's permissive joinder requirement that claims arise out of the same transaction or occurrence; (b) held that procedural misjoinder removal is available only where misjoinder is egregious, not merely improper; and (c) held that the alleged misjoinder was not "egregious," despite the joining of out-of-state plaintiffs who had no connection with the forum and no connection with the other plaintiffs, but who "coincidentally" were citizens of the same states as the defendants.  *See In re Propecia*, 2013 WL 3729570, at *10 ("The wisdom of permitting the joinder of an unlimited number of plaintiffs who purchase the same or similar drugs from any number of defendants simply because they allege that the drugs caused a common type of injury is questionable."); *In re Fosamax*, 2012 WL 1118780, at *5; *see also Anderson v. Home Ins. Co.*, 724 F.2d 82, 84 (8th Cir. 1983) ("Joinder designed solely to deprive federal courts of jurisdiction is fraudulent and will not prevent removal.").  In light of the significant problems with the *Prempro* decision addressed by these authorities, there is substantial doubt whether the Eighth Circuit would reaffirm *Prempro* if given the opportunity.  Moreover, *Prempro* was decided before *Daimler*, so the *Prempro* court did not consider whether joining the claims of a large number of Plaintiffs as to which the court lacked personal jurisdiction over the defendants, in light of the other factors, supported a finding of "egregiousness."  Accordingly, to the extent the Court determines that remand would be required under *Prempro*, the Johnson & Johnson Defendants submit that the Court should deny, or, alternatively, stay remand, to allow the Johnson & Johnson Defendants to seek interlocutory review of this important issue by the Eighth Circuit.[10]

---

[10]     Further, if there are questions regarding subject-matter jurisdiction and personal

89.     In sum, Plaintiffs' claims here do not arise out of the same transaction, occurrence, or series of transactions or occurrences; nor do they give rise to common questions of law or fact.  Thus, to the extent they are not dismissed for lack of personal jurisdiction, the claims of each Plaintiff should be severed into separate actions and the Court should retain jurisdiction over the remaining Plaintiffs as to whom complete diversity (and personal jurisdiction over the Defendants) exists.

90.     Finally, although the Johnson & Johnson Defendants submit that mere misjoinder is sufficient to trigger procedural misjoinder removal, as discussed above, the misjoinder here was not merely improper, it was egregious.

## II.     THE JOHNSON & JOHNSON DEFENDANTS HAVE COMPLIED WITH ALL REMOVAL PROCEDURES.

91.     The Johnson & Johnson Defendants were first served with the Summons and Complaint on August 25, 2014.  Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is timely filed within 30 days of such service.

92.     Imerys Talc America, Inc. f/k/a Luzenac America, Inc. was served on August 11, 2014.  Its consent to this Notice of Removal is attached hereto as **Exhibit C**.  Personal Care Products Council also was served on August 11, 2014.  Its consent to this Notice of Removal is attached hereto as **Exhibit D**.

93.     The Circuit Court for the City of St. Louis, Missouri is located within the Eastern District of Missouri.  *See* 28 U.S.C. §§ 105(a)(1), 1441(a).

94.     No previous application has been made for the relief requested herein.

---

jurisdiction, this Court has the discretion to decide those questions in any order.  *See In re AFY*, 743 F.3d 810, 815-18 (8th Cir. 2013).

95.     Pursuant to Local Rule 81-2.03 and 28 U.S.C. § 1446(a), copies of all process, pleadings, orders, and other documents on file with the Circuit Court for the City of St. Louis are attached hereto as **Exhibit E**.

96.     Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiffs and a copy is being filed with the Clerk of the Circuit Court for the City of St. Louis.

97.     The Johnson & Johnson Defendants reserve the right to amend or supplement this Notice of Removal.

98.     If any question arises as to the propriety of the removal of this action, the Johnson & Johnson Defendants request the opportunity to present a brief and request oral argument in support of removal.

WHEREFORE, the Johnson & Johnson Defendants respectfully remove this action from the Circuit Court of the City of St. Louis, in the State of Missouri, bearing the cause number 1422-CC09326, to this Court.

DATED:  September 10, 2014              Respectfully submitted,

                                       SHOOK, HARDY & BACON LLP

                                       By  /s/ Mark C. Hegarty
                                           Mark C. Hegarty, #40995MO
                                           Douglas B. Maddock, Jr., #53072MO

                                       2555 Grand Blvd.
                                       Kansas City, MO 64108-2613
                                       Telephone: (816) 474-6550
                                       Facsimile: (816) 421-5547
                                       mhegarty@shb.com
                                       dmaddock@shb.com

                                       *Attorneys for Defendants Johnson & Johnson and*
                                       *Johnson & Johnson Consumer Companies, Inc.*

28

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of September, 2014, a true and correct copy of the foregoing document was served upon the following via the Court's electronic notification system, electronic mail, and/or U.S. Mail, postage prepaid:

James G. Onder
Michael J. Quillin
Stephanie Rados
ONDER, SHELTON, O'LEARY
   & PETERSON, LLC
110 E. Lockwood, 2nd Floor
St. Louis, Missouri 63119
Telephone: (314) 963-9000
Facsimile: (314) 963-1700
onder@onderlaw.com
quillin@onderlaw.com
rados@onderlaw.com

R. Allen Smith, Jr.
THE SMITH LAW FIRM, PLLC
681 Towne Center Boulevard, Suite B
Ridgeland, Mississippi 39157
Telephone: (601) 952-1422
Facsimile: (601) 952-1426

Timothy W. Porter
Patrick C. Malouf
John T. Givens
PORTER & MALOUF, PA
Post Office Box 12768
Jackson, Mississippi 39236
Telephone: (601) 957-1173
Facsimile: (601) 957-7366

Ted G. Meadows
BEASLEY, ALLEN, CROW,
   METHVIN, PORTIS & MILES, P.C.
218 Commerce Street
Post Office Box 4160
Montgomery, Alabama 36103
Telephone: (334) 269-2343
Facsimile: (334) 954-7555

*Attorneys for Plaintiffs*

/s/ Mark C. Hegarty
*Attorney for Johnson & Johnson and Johnson &
Johnson Consumer Companies, Inc.*

29